IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD LEO BARNER, III,

     Plaintiff,

v.                          CASE NO. 5:16-cv-319-MW-GRJ

DAVID SASSER, et al.,

     Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This case is before the Court on ECF No. 82, Defendants David Sasser, Kimberly Smith, Lorraine Cabrillas, Olga Santiago, Mary Jager, and Tommy Ford's Motion for Summary Judgment. Upon the filing of Defendants' Motion, the Court ordered Plaintiff to file a response on or before July 31, 2018. ECF No. 83.

When Plaintiff failed to respond, the Court ordered Plaintiff to show cause on or before August 15, 2018, as to why the Motion for Summary Judgment should not be granted. ECF No. 85. Despite these two orders from the Court, as of the date of this Report and Recommendation, Plaintiff has failed to file a response. This matter is, therefore, ripe for review. For

the reasons discussed below, the undersigned recommends that

Defendants' Motion for Summary Judgment be granted.

## I. BACKGROUND

Plaintiff, a prisoner currently in the custody of the Florida Department

of Corrections (FDOC) at Okaloosa Correctional Institution, initiated this

case by filing a *pro se* complaint under 42 U.S.C. § 1983. ECF No. 1.

Plaintiff thereafter filed two amended complaints, and the case is now

proceeding on Plaintiff's Third Amended Complaint. ECF No. 57.

In his Third Amended Complaint, Plaintiff, who is HIV-positive and

has Hepatitis C, alleges he was denied HIV medication while confined in

the Bay County Sheriff's Office Jail (Bay County Jail) based on a jail policy

that prohibits initiating treatment for inmates who have been noncompliant

with their HIV medication. *Id.* at 6-7. The Third Amended Complaint names

as Defendants Tommy Ford, Sheriff of Bay County, in his official capacity,

as well as David Sasser, RN and Health Service Administrator, Olga

Santiago, CMT, Kimberly Smith, RN/CCHP, Lorraine Cabrillas, LPN, and

Mary Jager, LPN, in their individual and official capacities. *Id.* at 1.

Plaintiff alleges he was booked into the Bay County Jail on December

4, 2014. *Id.* at 6. He states he told Defendant Santiago, the intake nurse,

that he was HIV positive and had Hepatitis C, and that he had been taking

Stribild as well as "self-medicating." *Id.* However, Defendant Santiago told Plaintiff that he would not be put on his HIV medication. *Id.*

Plaintiff states he submitted sick-call requests asking for HIV medication on December 6, 2014, December 13, 2014, and December 17, 2014, but his requests were denied. *Id.* at 7. On December 17, 2014, Defendant Jager informed Plaintiff that, per jail policy, the jail does not do "new starts" of HIV medication, and Plaintiff would not receive HIV medication or lab work until he arrives at the FDOC. *Id.*

At court proceedings on March 24, 2015, April 9, 2015, and July 9, 2015, Plaintiff alleges he told the trial judge, Judge Brantly Clark, that the Bay County Jail refused to provide him HIV medication. *Id.* at 7-8. According to Plaintiff, Judge Clark and Plaintiff's attorney both contacted the Sheriff's Office and the Bay County Jail on Plaintiff's behalf but were told that Plaintiff would not be given the HIV medication. *Id.* Plaintiff also alleges that his mother contacted the Bay County Jail several times, and despite her offers to pay for Plaintiff to be transported to a program that would provide free medication, she was told that Plaintiff would not be provided the medication. *Id.* at 8.

Plaintiff states he was not given HIV medication until after he was transferred to the custody of the FDOC on August 19, 2015. *Id.* He further

alleges that lab results on October 12, 2015, were "dangerously low to the point that irreparable damage did occur to his health as well as expose him to opportunistic infections, such as pneumonia, esophageal candi[di]asis, salmonella, wasting syndrome, cirrhosis, and liver cancer." *Id.*

Plaintiff asserts that the defendants violated his Fourth,[1] Eighth, and Fourteenth Amendment rights by refusing to provide medications, x-rays, blood work, and laboratory work. *Id.* Plaintiff alleges that Defendants Sasser and Smith should have referred him to a doctor who could prescribe him the proper HIV medication. *Id.* As relief, Plaintiff seeks a change to the Bay County Jail's policy, compensatory and punitive damages, costs of the suit, and any additional relief the Court deems just, proper, and equitable. *Id.* at 10-12.

Plaintiff's claims against Defendants Jager, Sasser, Smith, Cabrillas, and Santiago in their official capacities were dismissed, along with Plaintiff's claim for injunctive relief against all Defendants. ECF Nos. 73 & 88. Defendants filed the current Motion for Summary Judgment, arguing three grounds: (1) Plaintiff has failed to establish a constitutional violation,

---

[1] Plaintiff asserts he has a liberty interest against unreasonable searches and seizures, however he alleges no facts in the Third Amended Complaint that state a claim for relief under the Fourth Amendment. Accordingly, to the extent Plaintiff asserts a Fourth Amendment claim, the claim is due to be dismissed.

(2) Defendants are entitled to qualified immunity, and (3) Plaintiff's claims

are unexhausted per 42 U.S.C. § 1997e(a). ECF No. 82.

In support of their Motion, Defendants submitted the Bay County

Jail's Chronic Care & Disease Management "Med 6" Policy (ECF No. 82-

1)[2]; the affidavit of Marc O. Wall, M.D., a licensed physician and Certified

Correctional Health Care Professional (ECF No. 82-2); Plaintiff's

Deposition, taken on September 14, 2017, along with Intake Data Sheets,

Intake Health Screening Forms, Sick-Call Requests, and Inmate Request

Forms pertaining to Plaintiff (ECF No. 82-3); The Bay County Jail's Off-Site

Care/Consultations "Med 64" Policy along with a copy of Plaintiff's First Set

of Interrogatories to Defendant David Sasser with Answers (ECF No. 82-4);

and the affidavit of Bay County Jail Warden Rick Anglin, along with a copy

of the Bay County Jail's Grievance Procedures. ECF No. 82-5.

Plaintiff failed to respond to Defendants' Motion and therefore has not

submitted any evidence refuting Defendants' Motion for Summary

Judgment. Under Fed. R. Civ. P. 56(e),

 [i]f a party fails to properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by Rule 56(c), the
court may:

    (1) give an opportunity to properly support or address the
    fact;

---

[2] Defendants also submitted a duplicate of the policy as ECF No. 82-4.

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

The Court may, however, consider Plaintiff's Third Amended Complaint when ruling on Defendants' motion for summary judgment. Plaintiff's Third Amended Complaint is signed under penalty of perjury. ECF No. 57 at 10. Thus, the Court can properly treat the Complaint like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The Court may, therefore, consider Plaintiff's sworn allegations in his Third Amended Complaint in ruling on the Motion for Summary Judgment.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the

Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the

merits, he cannot prevail at the summary judgment stage." *Beard v. Banks,*

548 U.S. 521, 530 (2006). Conclusory allegations based on subjective

beliefs are insufficient to create a genuine issue of material fact. *See, e.g.,*

*Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th

Cir. 2001).

The Eleventh Circuit has held that, in the context of an unopposed

motion for summary judgment, "the district court cannot base the entry of

summary judgment on the mere fact that the motion was unopposed, but,

rather, must consider the merits of the motion." *Reese v. Herbert*, 527 F.3d

1253, 1269 (11th Cir. 2008) (citation omitted). In describing those portions

of the record that a court must review, the Eleventh Circuit explained that

> [t]he district court need not *sua sponte* review all of the evidentiary
> materials on file at the time the motion is granted, but must ensure
> that the motion itself is supported by evidentiary materials. At the
> least, the district court must review all of the evidentiary materials
> submitted in support of the motion for summary judgment.

*Id.*

## III. DISCUSSION

Defendants move for summary judgment on the grounds that (1)

Plaintiff has failed to establish a constitutional violation, (2) Defendants are

entitled to qualified immunity, and (3) Plaintiff's claims are unexhausted per

42 U.S.C. § 1997e(a). ECF No. 82. Because the evidence establishes that

Plaintiff's claims are unexhausted and do not support a finding that
Defendants were deliberately indifferent to Plaintiff's serious medical
needs, Defendants' Motion for Summary Judgment is due to be granted for
the reasons explained below.

### A.    Plaintiff's claims are unexhausted and must be dismissed.

Under § 1997e(a) of the PLRA, "[n]o action shall be brought with respect
to prison conditions under section 1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility
until such administrative remedies as are available are exhausted." *See* 42
U.S.C. § 1997e(a); *see also Chandler v. Crosby*, 379 F.3d 1278, 1286
(11th Cir. 2004). Exhaustion is mandatory under the PLRA, and
unexhausted claims are not permitted. *Jones v. Bock*, 549 U.S. 199, 211
(2002). The requirement to exhaust "applies to all inmate suits about prison
life, whether they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong." *Porter v.
Nussle*, 534 U.S. 516, 532 (2002). A defendant bears the burden of proving
the plaintiff has failed to exhaust available administrative remedies. *Turner
v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

Further, the PLRA's exhaustion requirement contains a procedural
default component; prisoners must comply with the applicable deadlines, or

good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

According to the Bay County Jail's grievance procedures, inmates are required to utilize the informal grievance process prior to the submission of a formal grievance. *See* ECF No. 82-5 at 4, 6. An informal grievance is addressed through an Inmate Request Form titled as such. *Id.* at 4. If an inmate does not receive resolution in the informal process, the inmate may file a formal grievance and must document on the grievance that informal resolution was attempted. *Id.* at 6 ("A Formal Grievance is utilized when a resolution to an Informal was not satisfactory to a Detainee"). The formal grievance process is identical to the informal process with the exception of the title at the top of the [Bay County Jail] Formal Grievance Form. *Id.* ("The Formal Grievance Form should have the title of "Formal Grievance" clearly printed at the top of the page.").

If a griever is not satisfied after the formal grievance procedure, the griever may appeal to the Warden or designee by completing the Request for Warden Review portion of the grievance form and submitting the form to the Warden. *Id.* at. 8. The Warden or a designee decision is final. *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008). Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

"Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 530 F.3d at 1374-75 (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir. 1988)). Therefore, the Court will treat Defendants' argument as if it is raised in a motion to dismiss. *See Trias v. Fla. Dep't of*

*Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (district court properly construed the defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner*, 541 F.3d at 1082. The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211-12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings

under the second *Turner* step; such findings are subject to review on appeal for clear error).[2]

Applying the requisite two-step *Turner* analysis, the Court must compare the factual allegations in the Defendants' Motion for Summary Judgment construed as a motion to dismiss with the facts in the Plaintiff's response, and if they conflict, take Plaintiff's version of the facts as true. Plaintiff, however, did not file a response to the Motion for Summary Judgment, nor do the facts alleged in Plaintiff's Third Amended Complaint conflict with Defendants' version. Therefore, because there are no contested facts as to exhaustion, Defendants are entitled to have the Complaint dismissed for failure to exhaust administrative remedies.

Moreover, the evidence establishes that Defendants have met their burden of demonstrating failure to exhaust. On December 17, 2014, Plaintiff submitted an Inmate Request Form seeking medication for his "life-threatening disease." ECF No. 82-3 at 138. The document reflects that

---

[2] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213.

Defendant Jager responded to the request the following day, denying the medication based on the policy against new starts for HIV medication. *Id.*

At his deposition, Plaintiff testified that, based on his understanding of the grievance procedures, to initiate the informal grievance process, he was required to staple the Inmate Request Form (once responded-to by a prison official) to an informal grievance form and place it in the grievance box. *Id.* at 92-95. However, the jail did not have the proper informal grievance form to give to Plaintiff, and he was instead instructed to staple the Inmate Request Form to another Inmate Request Form and put it in the grievance box. *Id.*

Plaintiff testified that he did not hear back as to the initial submission, so he "couldn't proceed" to the next step, the formal grievance process. *Id.* at 95. He testified that he did not file any appeals and instead went straight to the courts. *Id.* Plaintiff further testified that there are "no grievance procedures posted, and they do not hand out the inmate book at the jail upon entering." *Id.* at 95-96. He testified that his mother called the Bay County Jail, and a Lieutenant Smith told her there were no grievance procedures in place at the Bay County Jail. *Id.* at 92-93, 96.

Defendants submitted a copy of the Bay County Jail's grievance procedures along with the affidavit of Warden Anglin, who was the Warden

of Bay County Jail during Plaintiff's incarceration. ECF No. 82-5. The procedures provide that "new inmates will be informed of the grievance procedure upon entry to the facility and a copy will be available in the inmate handbook or library." *Id.* at 8. In his affidavit, Warden Anglin states that all Bay County Jail inmates are informed of the grievance procedures upon entering the jail, and a copy of the procedures are available in the inmate handbook or the library. *Id.* at 2. Warden Anglin further states that Plaintiff did not submit any appeals to him during his incarceration at the Bay County Jail. *Id.*

Contrary to Plaintiff's allegations, the evidence establishes that there were grievance procedures in place at the Bay County Jail, that new inmates were informed of the grievance procedures upon entry to the facility, and a copy of the procedures were available in the inmate handbook or library.

Further, although Plaintiff's deposition testimony reflects that there was some confusion as to how to initiate the informal grievance process at the Bay County Jail (in part because the jail did not have the appropriate form), the procedures nevertheless provide that "if an inmate does not receive resolution in the informal process, he/she may file a formal grievance and must document on the grievance that informal resolution

was attempted." ECF No. 82-5 at 6. The procedures further provide the griever with an opportunity to appeal to the warden. *Id.* at 8.

When Plaintiff did not hear back after his initial submission, he could have filed a formal grievance and then an appeal. Plaintiff admits in the deposition that he did not proceed any further in the grievance process and instead went straight to the courts. Accordingly, Defendants have met their burden of establishing that Plaintiff failed to properly exhaust his claims. Plaintiff's claims are therefore barred under § 1997e(a).

### B. Defendants are entitled to summary judgment as to Plaintiff's claims of deliberate indifference.

1. *Defendants' Relevant Summary Judgment Evidence*

The Bay County Jail has in place a Chronic Care & Disease Management "Med-6" Policy. ECF No. 82-4. Regarding HIV treatment, the policy provides:

> BCSO Jail Facility will make every effort to continue medication for inmates diagnosed with HIV who have been *compliant* with a medication regiment prescribed by their physician prior to incarceration. BCSO Jail Facility will not initiate treatment for inmates who have been *non compliant* with the medication regimen prescribed by their physician prior to incarceration as this pattern of *non compliance* contributes to the risk of creating drug resistant viral strains. Inmates newly diagnosed with HIV through testing offered by Bay County Health Department [BCHD] will be referred to their services upon release.

*Id.* at 3. Plaintiff was diagnosed with HIV in 2006 at the age of 19. ECF No. 82-3 at 29. He used methamphetamine intravenously from 2005 to 2007. *Id.* at 28. He was diagnosed with Hepatitis C in either 2012 or 2013, which he "guess[es]" he acquired through the use of needles. *Id.* at 31. Following his HIV diagnosis, the BCHD prescribed Atripla and Stribild, but Plaintiff was noncompliant with his medication by going "off and on it, off and on it" sometimes for several months at a time. *Id.* at 34. Since acquiring HIV, Plaintiff has used illegal drugs, including methamphetamine intravenously, and engaged in sexual intercourse with ten to fifteen partners, including two partners possibly unaware of Plaintiff's HIV, and unprotected sexual intercourse with two partners. *Id.* at 38.

Plaintiff estimates he last visited the BCHD around the end of 2013. *Id.* at 41. Plaintiff thinks he took the prescribed Stribild through February of 2014, but then he got strung out on drugs, and did not take any prescribed medication for his HIV until after he entered the custody of the FDOC in August of 2015. *Id.* at 42-43; ECF No. 57 at 8.

Plaintiff was incarcerated at the Bay County Jail on four separate occasions: from July 26 through July 28, 2014; from November 5 through November 6, 2014; from December 3 through December 7, 2014; and,

finally, from December 11, 2014, until he entered the custody of the FDOC on August 19, 2015. ECF No. 82-3 at 21, 47-48, 121-124.

Plaintiff was noncompliant with his Stribild medication when he entered the jail on each occasion, and he did not seek medical attention or a prescription for Stribild in between incarcerations. *Id.* at 44-49. He concedes that he had knowledge of the jail's policy of prohibiting new starts of HIV medication for noncompliant patients and that he could have had a prescription for Stribild and been "compliant" by December 2014 if he had sought medical care after his release from incarceration in July of 2014 or upon his release in November of 2014. *Id.* at 91-92.

Plaintiff recalls Nurse Santiago informing him that the jail has a policy against doing new starts for HIV medication when she examined him on November 5, 2014. *Id.* at 46. During his third incarceration at the Bay County Jail, on December 6, 2014, Plaintiff submitted a sick call request to the jail asking to be put on his HIV medication. *Id.* at 129. A correction officer reported on the sick call request that Plaintiff did not show for the call. *Id.*

During his final incarceration at the Bay County Jail, on December 13, 2014, Plaintiff submitted a sick-call request requesting to be put back on Stribild, his "regular" medication. *Id.* at 130. Defendant Cabrillas responded

to the sick call request by writing that when Plaintiff was screened on intake, he informed staff that he took no medication and he listed no provider, but Plaintiff would have a physical in fourteen days. *Id.* Subsequently, Plaintiff was given a physical by either a nurse or doctor who explained to him that the jail does not do new starts for HIV medication. *Id.* at 57.

On December 17, 2014, Plaintiff submitted an Inmate Request Form asking to "immediately be brought back to medical to discuss" a life-threatening disease for which he was not on any medication. *Id.* at 138. Defendant Jager, an LPN, responded to the inmate request by explaining the new-start policy to Plaintiff and offering to schedule Plaintiff for an appointment with the doctor so that he can explain the policy again. *Id.* Plaintiff made an appointment to see the doctor, but later cancelled it because he did not want to pay the $7.00 fee. *Id.* at 72, 139.

On December 19, 2014, Plaintiff submitted an Inmate Request Form asking to be placed on a special diet due to his HIV and Hepatitis C, but Defendant Jager denied the request. *Id.* at 140. Plaintiff was transferred to the custody of the FDOC on August 19, 2015. ECF No. 57 at 8.

The Defendants also submitted an affidavit from Dr. Marc Wall, a licensed physician and Certified Correctional Health Care Professional.

ECF No. 82-2. Dr. Wall reviewed Plaintiff's medical records from the BCHD

and from the FDOC. *Id.* at 2. Dr. Wall explained that the Bay County

Sheriff's Office's Operating Procedures strive to protect patients who are

noncompliant from developing resistance to HIV medications. *Id.* He

explained as follows:

> Mr. Barner was frequently booked-in jail and often bonded-out of jail.
> If this non-compliant individual had been initiated on medication and
> released his probability of developing resistance to HIV medication
> increased. By his own admission to non-compliance, he would have
> engaged in his activities of "self-medicating" and unprotected sexual
> relations. Mr. Barner already has HIV and Hepatitis C. He poses a
> significant risk to the community, and this would be compounded if
> his diseases becomes resistant to medications. The operating
> procedures are appropriate because the Med-6 procedures continue
> care for those compliant patients, and offers an avenue of care for
> those non-compliant patients.

*Id.* Dr. Wall also concluded that Plaintiff suffered no injury through his time

at the Bay County Jail:

> Mr. Barner also has a limited understanding of his body's response to
> Stribild and most other HIV treatments. Most infectious disease
> physicians would agree that the best indicator of a patient's response
> to treatment would be the viral load. The viral load is measured in
> millions of copies or virus particles in a milliliter of blood. A review of
> Mr. Barner's lab reveals viral loads from 17,757 on 07/09/2013 to as
> low as seventy five when he was compliant. His secondary CD4 count
> rarely changed. Most infectious disease physicians would agree that
> the CD4 count may never rise to a normal value even though the
> patient has a good response to treatment.

*Id.*

2. *Deliberate Indifference*

In *Estelle v. Gamble*, the Supreme Court held that deliberate

indifference to the serious medical needs of prisoners violates the Eighth

Amendment prohibition against cruel and unusual punishment. 429 U.S. 97

(1976). To establish an Eighth Amendment violation stemming from the

deprivation of medical attention, the prisoner must set forth evidence of an

objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention

requires that the prisoner demonstrate (1) "an objectively serious medical

need," which is one that is so grave that, "if left unattended, pos[es] a

substantial risk of serious harm," and (2) that the officials' response was so

inadequate as to "constitute an unnecessary and wanton infliction of pain,"

and was not "merely accidental inadequacy, negligen[ce] in diagnosi[s] or

treat[ment], or even [m]edical malpractice actionable under state law."

*Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (alterations in

original) (internal quotation marks omitted). "It is obduracy and wantonness,

not inadvertence or error in good faith, that characterize the conduct

prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Further, a prisoner must demonstrate a "subjective intent to punish," by showing an attitude of "deliberate indifference," which requires showing an "aware[ness] of facts from which the inference could be drawn that a substantial risk of harm exists [ ] and . . . draw[ing of] the inference." *Taylor*, 221 F.3d at 1258 (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, a prisoner must prove four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Id.*

However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, matters of medical judgment do not constitute deliberate indifference. *Estelle*, 429 U.S. at 107.

The Court finds that Defendants are entitled to summary judgment as to Plaintiff's claims of deliberate indifference. Defendants' evidence demonstrates, without contravention, that Plaintiff was noncompliant with

his HIV medication prior to and in between his incarcerations in the Bay County Jail and has a history of engaging in recreational behavior that put the community at risk.

Defendants used their medical judgment to conclude, pursuant to the Med-6 policy, that *not* initiating Plaintiff on HIV medication while at the Bay County Jail due to the risk of developing drug-resistant viral strains of HIV was better for Plaintiff's overall health and the health and safety of the community. While Plaintiff may disagree with the policy, he has not presented any evidence to support his allegation that Defendants were deliberately indifferent to his serious medical needs. This disagreement amounts at most to a difference of opinion, which does not give rise to a constitutional violation. *See Harris*, 941 F.2d at 1505.

Additionally, Plaintiff has not presented any evidence showing a causal connection between Defendants' decision not to start him on HIV medication while incarcerated at the Bay County Jail and any of his alleged injuries. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury").

Plaintiff alleges that lab results on October 12, 2015, were "dangerously low to the point that irreparable damage did occur to his health as well as expose him to opportunistic infections, such as pneumonia, esophageal candi[di]asis, salmonella, wasting syndrome, cirrhosis, and liver cancer." ECF No. 57 at 8. However, Plaintiff's bare assertion that his lab results are "dangerously low" is not supported by the record and insufficient to defeat summary judgment. *See Bald Mountain Park*, *Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). Because the evidence does not establish a constitutional violation, Defendants are entitled to summary judgment.

### C. Qualified Immunity

Defendants Sasser, Smith, Cabrillas, Santiago, and Jager further assert that they are entitled to qualified immunity because their conduct does not amount to a constitutional violation, and Plaintiff cites to no precedent that would have put Defendants on notice that the Bay County Jail's policy regarding new starts for noncompliant patients was unconstitutional.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. City of Atlanta, Georgia,* 485 F.3d 1130, 1136 (11th Cir. 2007). If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The undisputed evidence here demonstrates that Defendants were government officials acting within their discretionary authority. For the reasons discussed in the previous section, the evidence does not support Plaintiff's allegations of medical deliberate indifference. Accordingly, because the evidence does not show that Defendants violated Plaintiff's constitutional rights, Defendants are entitled to qualified immunity as to Plaintiff's individual-capacity claims.

## IV.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that: Defendants' Motion for Summary Judgment, ECF No. 82, should be **GRANTED** and judgment as a matter of law should be entered in favor of Defendants Sasser, Smith, Cabrillas, Santiago, and Jager in their individual capacities and Defendant Ford in his official capacity.

**IN CHAMBERS** this 10th day of December 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

thereof. <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u>  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.